UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15-cv-118-FDW
(3:01-cr-2-FDW-3)

| | |
|---|---|
| ANTONIO DEMOND BYERS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1).

**I. BACKGROUND**

Petitioner Antonio Byers, Davieyon Hopkins, Dalton Hopkins, and Allen Berry were part of a gang called "Tru" that was based in Charlotte, North Carolina. (Crim. Case No. 3:01cr2-FDW-3, PSR at ¶ 7). The gang sold crack cocaine and was known for carrying weapons, as well as for robbing drugs and weapons from other drug dealers. (Id.). In July 1999, Petitioner shot a marijuana dealer he and the other gang members were trying to rob. (Id. at ¶ 8). During this crime, Berry stole a firearm that he found in the victim's car. (Id.).

In September 1999, Petitioner, Davieyon Hopkins, and Berry decided to rob Bernard Bailey, one of their cocaine suppliers, of drugs and money after setting up a buy. (Id. at ¶ 9). Petitioner and Hopkins each carried 9mm handguns, while Berry carried a .44 magnum revolver. (Id.). Bailey met the men outside of his residence carrying the drugs they had requested. (Id.). Berry pointed his firearm at Bailey and demanded the drugs. Id. When Bailey resisted, Berry

1

fired a shot into the ground to show that he was serious.  (Id.).  Hopkins then took the cocaine and some money that he removed from Bailey's pocket.  (Id.).  As Petitioner, Berry, and Hopkins were returning to their vehicle with the drugs and money, Bailey pulled a firearm and began shooting at them.  (Id.).  All three men turned around and fired shots at Bailey, who was hit in the chest and abdomen and later died from his wounds.  (Id.).  It was determined that Bailey was killed by the .44 revolver wielded by Berry.  (Id.).

On January 8, 2001, Petitioner was indicted for conspiracy to possess with intent to distribute and distribution of 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 846, 841(b)(1) (Count One); four counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Counts Two, Six, Nine, and Thirteen); possession with intent to distribute 5 grams or more of cocaine base in violation of 21 U.S.C. §§ 846, 841(b)(1) (Count Four); aiding and abetting the use of a firearm during a drug trafficking offense causing death in violation of 18 U.S.C. §§ 924(c)(1), (j)(1) and 2 (Count Five, relating to Bailey's killing); and aiding and abetting the use of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1) and 2 (Count Twelve, relating to the July shooting of the marijuana dealer).  (Id., Doc. No. 3: Indictment).

Petitioner agreed to plead guilty to Counts One (drug trafficking) and Five (aiding and abetting the use of a firearm to kill Bailey during a drug trafficking offense).  (Id., Doc. No. 57 at ¶ 1: Plea Agreement).  The Government agreed to dismiss the remaining counts of the Indictment.  (Id. at ¶ 2).  Although the counts to which Petitioner pleaded carried a mandatory life sentence, or the death penalty as to Count Five, the parties agreed that, in exchange for Petitioner's compliance with the plea agreement, a thirty-year sentence was appropriate.  (Id. at ¶

2

3).  The parties stipulated that a murder was committed in furtherance of the drug conspiracy and that the amount of cocaine base that was reasonably foreseeable to Petitioner was at least 150 grams, but less than 500 grams.  (Id. at ¶ 4).  The parties also agreed that this Court could use any non-contested facts in the PSR to establish a factual basis for the plea, and Petitioner conceded that there was a factual basis for the plea.  (Id. at ¶ 10).  As part of his plea agreement, Petitioner waived the right to challenge his conviction or sentence on direct appeal or in any post-conviction proceeding, except as to claims of ineffective assistance of counsel or prosecutorial misconduct.  (Id. at ¶ 15).

At the plea hearing, Petitioner stated under oath that he fully understood the charges against him, as well as the maximum penalties; that he was guilty of the charges; that he expressly waived his right to appeal or to challenge his conviction or sentence in any post-conviction proceeding; that his plea was voluntary; and that he was satisfied with the services of his attorney.  (Id., Doc. No. 63 at 1; 3: Entry and Acceptance of Guilty Plea).  In accordance with the plea agreement, Petitioner was sentenced to 240 months of imprisonment on Count One and to 120 months of imprisonment on Count Five, with the sentences to run consecutively, for a total of 30 years.  (Id., Doc. No. 82: Judgment).  Judgment was entered on February 19, 2002.  (Id.).  Petitioner did appeal, and his motions to reduce his sentence based on amendments to the Guidelines for crack cocaine were denied.  (Id., Doc. Nos. 147; 158; 168).  Petitioner placed the present § 2255 petition in the prison system for mailing on March 5, 2015, and the petition was stamp-filed in this Court on March 10, 2015.  In his sole claim for relief, Petitioner argues that his aiding and abetting conviction is invalid in light of the Supreme Court's decision in

Rosemond v. United States, 134 S. Ct. 1240 (2014).[1]  (Doc. No. 1 at 4).

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  After examining the record in this matter and the Government's Response, the Court finds that the argument presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Government first contends that Petitioner's Rosemond claim is subject to dismissal because he waived the right to bring it in his plea agreement.  The Court agrees.  Although Petitioner preserved the right to pursue claims of ineffective assistance of counsel or prosecutorial misconduct, he does not allege that either of those exceptions applies here.  Nor does Petitioner allege that the waiver of his right to pursue post-conviction relief was involuntary.  A knowing and voluntary waiver of the right to pursue post-conviction relief is enforceable.  See United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).  Here, there is no

---

[1] Under 28 U.S.C. § 2255(f)(3), a petitioner has one year from "the date on which the right asserted was initially recognized by the Supreme Court" to file his § 2255 motion, where the right is newly recognized and applies retroactively to cases on collateral review.  The Supreme Court decided Rosemond on March 5, 2014, and Petitioner certified that he delivered his § 2255 motion to prison authorities for mailing on March 5, 2015.  The Government states in its response that Rosemond announced a substantive rule and it is, therefore, retroactively applicable to cases on collateral review.  (Doc. No. 5 at 5).  The Government asserts in its response that it, therefore, concedes that Petitioner's § 2255 motion is timely.  (Id.).

allegation of involuntariness, and any such allegation would be frivolous because it would contradict Petitioner's testimony at the plea hearing.  (Crim. Case No. 3:01cr2-FDW-3, Doc. No. 63 at ¶¶ 23-28).  Furthermore, a waiver in a plea agreement is enforceable even if there is an intervening change in the law.  See United States v. Copeland, 707 F.3d 522, 529 (4th Cir.), cert. denied, 134 S. Ct. 126 (2013).  Thus, Petitioner's reliance on Rosemond does not affect the validity of his waiver of the right to pursue post-conviction relief.  Accordingly, Petitioner's Rosemond claim is barred by the waiver in his plea agreement.

The Government argues additionally, and the Court agrees, that Petitioner's challenge to the factual basis for his guilty plea is procedurally barred due to his failure to raise this issue on direct appeal.  A § 2255 motion is not a substitute for a direct appeal.  Claims of errors, such as the lack of a factual basis to support a guilty plea, that could have been raised on direct appeal, but were not, are procedurally barred unless the petitioner shows both cause for the default and actual prejudice, or demonstrates that he is actually innocent of the offense.  See Bousley v. United States, 523 U.S. 614, 621-22 (1998); United States v. Bowman, 267 F. App'x 296, 299 (4th Cir. 2008).  "[C]ause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel."  United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999).  A subsequent change in the law justifies the failure to raise an issue only where the state of the law was such that "the legal basis for the claim was not reasonably available when the matter should have been raised."  Id.  The futility of raising an issue does not establish cause.  United States v. Pettiford, 612 F.3d 270, 281 (4th Cir. 2010).

To show actual prejudice, a petitioner must demonstrate that errors in the proceedings

"worked to his actual and substantial disadvantage" and were of constitutional dimension. See United States v. Frady, 456 U.S. 152, 170 (1982). To show actual innocence, a petitioner must demonstrate that he "has been incarcerated for a crime he did not commit." United States v. Jones, 758 F.3d 579, 584 (4th Cir. 2014), cert. denied, 135 S. Ct. 1467 (2015). Actual innocence is based on factual innocence and "is not satisfied by a showing that a petitioner is legally, but not factually, innocent." See Mikalajunas, 186 F.3d at 494.

Here, Petitioner procedurally defaulted the argument that the factual basis for his plea was insufficient by failing to raise it on direct appeal. He does not allege cause and prejudice to overcome this procedural default. Nor could he show cause and prejudice. A challenge to the sufficiency of the factual basis could have been raised earlier, see United States v. Sanders, No. 96-4972, 1997 WL 585742 (4th Cir. 1997) (unpublished) (challenging the sufficiency of the factual basis for a guilty plea to aiding and abetting the use of a firearm under § 924(c)(1)), even if it was not likely to succeed, see Pettiford, 612 F.3d at 280-84. Additionally, as discussed below, Petitioner cannot show prejudice because the factual basis for Petitioner's guilty plea was adequate.

Likewise, although Petitioner makes the conclusory allegation that he is actually innocent, he cannot show actual innocence to overcome his procedural default because the evidence is clear that he intentionally participated in the drug deal knowing that he and his confederates were armed, Petitioner himself fired it at the victim during the offense, and the victim died from wounds sustained during the shooting. See (Crim. Case No. 3:01cr2-FDW-3, PSR at ¶ 9). This evidence, as well as Petitioner's testimony at the plea hearing that he was in fact guilty of the offense, clearly shows that he aided and abetted the use of a firearm during and

in relation to a drug trafficking crime causing death. Because he cannot show cause, prejudice, or actual innocence, he cannot overcome the procedural bar.

Finally, the Government contends, and the Court agrees, that even if Petitioner had not waived the right to bring his Rosemond claim, and even if were not procedurally barred, Petitioner's Rosemond claim would fail on the merits. In support of his Rosemond claim, Petitioner contends that the factual basis for his guilty plea was insufficient to establish that he had advance knowledge that Berry was going to carry or use a gun. (Id. at 5). In particular, he argues that the Government was required to prove that Petitioner had advance knowledge that Berry was going to fire his weapon.

Petitioner's reliance on Rosemond is misplaced. In Rosemond, the petitioner Justus Rosemond was involved in a drug deal in which shots were fired, but there was a dispute as to whether Rosemond or his confederate wielded the firearm. Rosemond, 134 S. Ct. at 1243. The Government charged Rosemond with violating 18 U.S.C. § 924(c), using a firearm in connection with a drug-trafficking crime, and aiding and abetting that offense under 18 U.S.C. § 2. Id. The district court instructed the jury that it could convict if "'(1) the defendant knew his cohort used a firearm in the drug trafficking crime, and (2) the defendant knowingly and actively participated in the drug trafficking crime.'" Id. at 1244. Rosemond was convicted pursuant to a general verdict form that did not indicate whether he had used the firearm, or whether he had aided and abetting his confederate's use of the firearm. Id. at 1244.

The Tenth Circuit affirmed, but the Supreme Court vacated and remanded, finding that the trial court's jury instructions were improper. Id. at 1244-45. In particular, the Supreme Court held that the district court's failure to instruct the jury that Rosemond needed advance

knowledge of the firearm was error. Addressing the intent requirement of an aiding and abetting offense, the Court held that "[a]n active participant in a drug transaction has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun." Id. at 1249. This knowledge must be advance knowledge and must occur at a point where the defendant has the chance to opt out of the crime. Id. at 1249-50. Thus, if he proceeds, the defendant will have chosen "to align himself with the illegal scheme in its entirety—including its use of a firearm." Id. at 1249. The Court, however, rejected Rosemond's assertion that he was required to take an affirmative act to assist in the use of the firearm. Id. at 1246-47. Rather, the Court held that Rosemond's participation in the drug deal was sufficient to satisfy the affirmative act requirement for aiding and abetting a violation of § 924(c). Id. at 1247.

Petitioner is simply incorrect to the extent that he argues in his petition that, under Rosemond, the Government was required to prove that he had advance knowledge that a confederate would shoot. See (Doc. No. 1 at 5). Rather, it is sufficient to show that a person knows beforehand of the intent to carry a firearm. Rosemond, 134 S. Ct. at 1249. Here, there is ample evidence to support Petitioner's conviction for aiding and abetting the use of a firearm during and in relation to a drug trafficking crime that caused death. That is, there was ample evidence to show that Petitioner knew that Berry would bring a firearm to the drug deal, just as Berry was known to do, and Petitioner was himself carrying a firearm, which he fired at the victim during the course of the offense. (Crim. Case No. 3:01cr2-FDW-3, PSR at ¶ 9). Indeed, Petitioner and his confederates were all known to carry firearms, and their willingness to use the firearms was evident from Petitioner's own shooting of a marijuana dealer less than two months before Bailey's murder. (Id. at ¶¶ 7; 8). The fact that it was Berry's bullet that killed the victim

8

does not relieve Petitioner of his responsibility for aiding and abetting the offense. See United States v. Wilson, 135 F.3d 291, 305 (4th Cir. 1998). Therefore, there is simply no basis for Petitioner's contention that he was improperly convicted in light of Rosemond or that he is actually innocent of the offense of aiding and abetting.

## IV. CONCLUSION

For the reasons stated herein, the Court will dismiss the § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's § 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

_____
Frank D. Whitney
Chief United States District Judge